# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MACK SHEDD,**

      **Petitioner,**

**v.**                        **Case No. 8:19-cv-2296-VMC-MRM**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## ORDER

Before the Court is Petitioner Mack Shedd's timely-filed *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition and the response (Doc. 8),[1] the Court **ORDERS** that the petition is **DENIED**.

## Background

A state court jury found Shedd guilty of two counts of lewd or lascivious molestation by a person over 18 years of age upon a child 12 years of age or older but less than 16 years of age. (Doc. 8-2, Ex. 7.) The state trial court sentenced Shedd to an overall term of 15 years in prison, followed by three years of sex offender probation. (Doc. 8-2, Ex. 10.) The state appellate court *per curiam* affirmed the convictions and sentences. *Shedd v. State*, 252 So.3d 1214 (Fla. 2d DCA 2018).

---

[1] Shedd did not file a reply. Additionally, although Shedd was permitted an opportunity to move to amend his petition, he did not do so. (Docs. 11, 14.)

Shedd filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 8-2, Ex. 13.) The state postconviction court denied the motion in part and struck it with leave to amend in part. (Doc. 8-2, Ex. 14.) After Shedd filed an amended motion, the state court entered a final order denying postconviction relief. (Doc. 8-2, Exs. 15, 16.) Shedd did not appeal the denial of relief.

### Standard Of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Shedd's convictions and sentences without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage

4

and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

<u>Analysis</u>

**Ground One**

Shedd contends that trial counsel was ineffective for not moving to dismiss, for not moving to suppress, and for failing to investigate and present a defense. The ineffective assistance claims raised with in Ground One are barred from review.

Shedd appears to have raised these claims in his amended motion for postconviction relief, alleging that trial counsel made numerous errors and failed to "use an appropriate method to defend him." (Doc. 8-2, Ex. 15, p. 8.) The state postconviction court denied Shedd's claims on the bases that they were facially insufficient and too conclusory to warrant relief. (Doc. 8-2, Ex. 16, pp. 2-3.) Because Shedd did not appeal the state postconviction court's ruling, he failed to satisfy the exhaustion requirement. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial."); *see also Boerckel*, 526 U.S. at 845 (stating that the exhaustion doctrine requires a petitioner to give the state courts a full opportunity to resolve a federal constitutional claim "by invoking one complete round of the State's established appellate review process").

Shedd cannot return to state court to file an untimely postconviction appeal. *See* Fla. R. Crim. P. 3.850(k) (stating that a notice of appeal must be filed within 30 days of the rendition of a final order denying postconviction relief). Accordingly, Shedd's claims are procedurally defaulted. *See Smith*, 256 F.3d at 1138. They can be considered only if Shedd establishes the applicability of the cause and prejudice or fundamental miscarriage of justice exception. *See id*. As Shedd fails to do so, his claims are barred from federal habeas review. Shedd is not entitled to relief on Ground One.

**Ground Two**

Shedd challenges the sufficiency of the evidence. Specifically, he contends that "the evidence failed to establish that this was a lewd or lascivious act." (Doc. 1, p. 8.) As an initial matter, Shedd fails to clearly allege a federal constitutional violation in Ground Two. Therefore, his claim is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

Even liberally construing the claim as alleging a federal due process violation,[2] Shedd cannot obtain habeas relief. Shedd challenged the sufficiency of the evidence on direct appeal, claiming a violation of his federal constitutional rights. (Doc. 8-2, Ex. 11, pp. 10-12.) The state appellate court denied his claim without discussion.

---

[2] *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers").

The sufficiency of the evidence standard asks whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On federal habeas review, this standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16. "Although each element of the offense must be established beyond a reasonable doubt, *see Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990), . . . the State is not required to rule out every hypothesis except that of the guilt of the defendant, *see Jackson*, 443 U.S. at 326." *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant. *Id*. Accordingly, a federal court must defer to the judgment of the jury in assigning credibility to witnesses and weighing the evidence. *Id.*

To obtain a conviction for the offense of lewd or lascivious molestation, the State had to prove beyond a reasonable doubt that: (1) Shedd was 18 years of age or older; (2) the victim was 12 years of age or older but less than 16 years of age; and (3) Shedd, in a lewd or lascivious manner, intentionally touched the victim's "breasts, genitals, genital area, or buttocks, or the clothing covering them." § 800.04(5)(a), (c)2., Fla. Stat. Shedd does not contest the evidence establishing his age and the victim's age. He argues that the evidence does not show that he touched the victim in a lewd or lascivious manner. "The words 'lewd' and 'lascivious' mean the same thing: a wicked,

lustful, unchaste, licentious, or sensual intent on the part of the person doing an act." Fla. Std. Jury Instr. (Crim.) 11.10(c).

For count one, the State alleged that Shedd touched the "genitals, genital area and/or the clothing covering the genital area" of the victim. (Doc. 8-2, Ex. 1.) For count two, the State alleged that Shedd touched the "breasts and/or the clothing covering the breast area" of the victim. (*Id.*) The victim testified at trial that Shedd was her mother's long-term boyfriend. (Doc. 8-2, Ex. 5, pp. pp. 135-36.) She testified that one day between 3:00 and 5:00 a.m., she was on the couch watching TV when Shedd came out of another room and moved onto the couch. (*Id.*, pp. 137-39.) Shedd turned off the TV and moved closer to the victim. (*Id.*, pp. 139-40.) Shedd used his hands to touch the victim's breasts in a circular motion. (*Id.*) He moved his hands down her body and underneath her shorts. (*Id.*, pp. 140-41.) Shedd moved his hand to the victim's vagina and moved his hand in a circular motion for several minutes. (*Id.*, pp. 141-42.) When police interviewed Shedd, he stated that this was the first time anything happened and that he did not know why he touched the victim that way. (*Id.*, pp. 308-11.) He told the interviewing officer that "we never made love or anything like that." (*Id.*, p. 310.)

Shedd fails to show that no rational trier of fact could have found proof of guilt beyond a reasonable doubt when considering this evidence in the light most favorable to the State. *See Jackson*, 443 U.S. at 319. He does not establish that the state court's denial of his federal sufficiency of the evidence claim was contrary to or involved an

unreasonable application of clearly established federal law or was based on an unreasonable factual determination. Shedd is not entitled to relief on Ground Two.

**Ground Three**

In Ground Three, Shedd contends that the prosecutor diminished the presumption of innocence and burden of proof, asked questions that were "real[l]y statements," appealed to the jury's sympathy, and "pre-trys [sic] her case." (Doc. 1, p. 9.) He also states that there were no instructions read to the jury and that there was "no objection to anything." (*Id.*, pp. 9-10.) As in Ground Two, the Court finds that Shedd's claims are not cognizable on federal habeas review because Shedd does not clearly allege any federal constitutional violation. *See McGuire*, 502 U.S. at 67-68; *Branan*, 861 F.2d at 1508. Even if Shedd's petition is liberally construed as asserting federal constitutional violations, he cannot obtain relief.

**A. Prosecutorial Misconduct**

The Court finds that any independent claim of prosecutorial misconduct, as presented in the § 2254 petition, is too vague, conclusory, and lacking in factual support to establish entitlement to relief. *See, e.g.*, *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("A petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation."). But to the extent Shedd's *pro se* pleading is liberally construed to raise the same claim of prosecutorial misconduct that he raised on direct appeal, Shedd does not show entitlement to relief.

Shedd argued on direct appeal that the prosecutor undermined his presumption of innocence by commenting on his right to remain silent in violation of his federal constitutional rights when she argued about his statements to police. The prosecutor asserted, "Let's think about this. A man who is being accused of molesting his stepdaughter if he didn't do it, isn't the most logical thing to say I didn't do this? No way did I do this." (Doc. 8-2, Ex. 6, p. 360.) The trial court overruled counsel's objection, and the prosecutor then stated, "Wouldn't that be the most logical response to the questions of the detective rather than his actual responses, which infer that he is admitting guilt?" (*Id.*)

Closing argument is meant to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). A prosecutor is permitted to comment on the argument and argue inferences she believes the jury should draw from the evidence. *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984). However, a prosecutor may not comment directly or indirectly on a defendant's failure to testify. *United States v. Muscatell*, 42 F.3d 627, 631-32 (11th Cir. 1995). To demonstrate that the prosecutor violated his right to remain silent, Shedd must prove that the prosecutor manifestly intended to comment on his failure to testify, or that the comment was of such a nature that the jury would "naturally and necessarily take it to be a comment on [his] failure . . . to testify." *United States v. Bright*, 630 F.2d 804, 825 (5th Cir. 1980).

Shedd fails to establish entitlement to relief. The prosecutor referred to the statements Shedd made to police when he chose to speak to them during the

investigation, rather than his choice not to testify at trial. Shedd argued that the victim was not credible and that she was motivated to fabricate the offenses to get Shedd away from her family because her brother did not get along with Shedd. (Doc. 8-2, Ex. 54, pp. 129-31; Ex. 6, pp. 367-77.) The prosecutor was arguing about the believability of that theory considering the statements Shedd made to police. *See, e.g.*, *Davis v. State*, 136 So.3d 1169, 1203 (Fla. 2014) ("[A] prosecutor is permitted to suggest to the jury that based on the evidence of the case, they should question the plausibility of the defense's theory.") (internal quotation marks and citation omitted).

Moreover, even assuming any impropriety in the statement, Shedd fails to show that any error was harmful in light of the State's evidence. "The test . . . is whether the error had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.") (internal quotation marks and citation omitted); *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995) (stating that a defendant's substantial rights "are prejudicially affected [by an improper prosecutorial comment] when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would have been different"). Thus, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." *Brecht*, 507 U.S. at 637 (internal quotation

marks omitted). Considering the trial record and the evidence presented against him, Shedd does not show that he suffered actual prejudice as a result of the identified remarks.

Shedd also argued on direct appeal that the prosecutor improperly shifted the burden of proof by "minimizing reasonable doubt" in violation of his federal constitutional rights. (Doc. 8-2, Ex. 11, pp. 12-14.) He cited comments of the prosecutor such as, "[t]here is doubt in every decision that is made in this world" and "there could be some doubts that have been raised throughout this trial. . . . But those doubts that were presented in this case are not reasonable doubt[.]" (Doc. 8-2, Ex. 6, pp. 363-64.) Shedd also cited a portion of closing argument during which, in attempting to explain the concept of reasonable doubt, the prosecutor used the analogy of buying a home. She asserted that while a homebuyer may identify many potential problems with a home, a potential problem that is unlikely to materialize is "probably not a reasonable doubt and the buyer should make that decision and move on to buy the house. So as in that scenario in this case if there is any doubt in the mind of a juror, a juror should weigh whether or not that is a reasonable concern in this case or it doesn't matter. A reasonable doubt can come from the evidence, a lack of evidence, or a conflict in the evidence." (*Id.*, pp. 363-65.)

A prosecutor is prohibited from advancing "burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence." *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992); *see also Lucas v. State*, 67 So.3d 332, 336 (Fla. 4th DCA 2011) (stating that a prosecutor shifts the

burden of proof by insinuating that the defendant needs to prove anything or inviting the jury to convict him for a reason other than the State's proving his guilt by evidence beyond a reasonable doubt). The identified comments did not make any such suggestion. Nor does Shedd establish that the prosecutor misstated the law on reasonable doubt.

Furthermore, the trial court instructed the jury that they were to decide the case based on the law as provided by the court, and gave instructions on the State's burden to prove the offenses beyond a reasonable doubt and Shedd's presumption of innocence. (Doc. 8-2, Ex. 6, pp. 341-42, 345.) The jury is presumed to have followed the trial court's instructions. *See Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions."). Finally, even if the comments were improper, Shedd is not entitled to federal habeas relief because he does not establish, in light of the evidence and the trial record, that he suffered actual prejudice as a result of the comments. *See Brecht*, 507 U.S. at 637.

Lastly, Shedd argued on appeal that the prosecutor improperly presented "facts created from air" that lacked record support. (Doc. 8-2, Ex. 11, p. 14.) The State argued that the jury should not be concerned about a lack of DNA evidence because DNA would not have been left behind in this case, and "it wasn't going to help you anyway and it wasn't going to be there." (Doc. 8-2, Ex. 6, p. 366.) Even assuming that this comment was improper because it relied on evidence not introduced at trial, however, Shedd cannot show actual prejudice as required to obtain relief. Again, considering

the significant evidence of guilt, Shedd has not demonstrated that any error in the prosecutor's statement "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

Shedd does not show that the state appellate court's denial of his claim on direct review was contrary to or involved an unreasonable application of clearly established federal law, or that it was based on an unreasonable factual determination. Shedd is not entitled to relief on the portion of Ground Three alleging prosecutorial misconduct.

### B. Ineffective Assistance Of Trial Counsel

In his amended postconviction motion, Shedd appeared to argue that trial counsel was ineffective for not objecting to prosecutorial misconduct. (Doc. 8-2, Ex. 15, p. 9.) The state court rejected this claim as "facially insufficient, as it is completely conclusory." (Doc. 8-2, Ex. 16, p. 4.) Because Shedd did not appeal the state postconviction court's order, he did not exhaust this claim of ineffective assistance of trial counsel. *See Leonard*, 601 F.2d at 808. Shedd does not show that an exception applies to overcome the resulting procedural default. *See Smith*, 256 F.3d at 1138. Accordingly, Shedd's ineffective assistance of trial counsel claim is barred from federal habeas review.

### C. Trial Court Error

To the extent Shedd asserts trial court error in failing to read the jury instructions, and even if this argument is construed as a federal constitutional claim, Shedd cannot obtain relief. In ground three of his first postconviction motion, Shedd

claimed the trial court failed to read jury instructions. (Doc. 8-2, Ex. 13, p. 9.) However, Shedd did not present a federal claim in his state postconviction motion. (*Id.*) Because he did not raise the federal nature of the claim in state court, Shedd did not exhaust a federal claim. *See Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) ("The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim."). Shedd cannot return to state court to raise a federal trial court error claim in an untimely direct appeal.[3] *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within 30 days of the rendition of the sentence). Therefore, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Since Shedd does not show the applicability of an exception to overcome the default, *see id.*, the portion of Ground Three alleging trial court error is barred from federal habeas review.

**Ground Four**

Shedd appears to argue that trial counsel was ineffective for advising him not to testify. Shedd raised this claim in his amended postconviction motion. (Doc. 8-2, Ex. 15, p. 8.) The state postconviction court denied Shedd's ineffective assistance claims as facially insufficient and too conclusory to warrant relief. (Doc. 8-2, Ex. 16, pp. 2-3.) Again, Shedd did not appeal the order denying his postconviction motion. Accordingly, his ineffective assistance claim is unexhausted, *see Leonard*, 601 F.2d at 808, and is now procedurally defaulted. *See Smith*, 256 F.3d at 1138. Shedd has not

---

[3] The state court rejected Shedd's trial court error claim as procedurally barred, noting that it should have been raised on direct appeal. (Doc. 8-2, Ex. 14, pp. 2-3.)

established that an exception applies to excuse the default. *See id.* Consequently, Ground Four is barred from federal habeas review.

It is therefore **ORDERED** that Shedd's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Shedd and to **CLOSE** this case.

<u>**Certificate Of Appealability**</u>
<u>**And Leave To Appeal *In Forma Pauperis* Denied**</u>

It is further **ORDERED** that Shedd is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To obtain a certificate of appealability, Shedd must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Shedd has not made the requisite showing. Finally, because Shedd is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on August 2, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE